UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-61467-BLOOM/Valle

**EDUARDO PAGAZANI,**

    Plaintiff,

v.

**EQUIFAX INFORMATION
SERVICES, LLC**,[1]

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Equifax Information Services, LLC's ("Defendant" or "Equifax") Motion for Summary Judgment, ECF No. [38] (the "Motion"), filed on March 28, 2016. The Court has carefully reviewed the Motion, the supporting and opposing submissions, including Plaintiff's Response, ECF No. [42] ("Response"), and Defendant's Reply, ECF No. [43] ("Reply"), the record, and the applicable law, and is otherwise fully advised. For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I. Background**

Plaintiff Eduardo Pagazani ("Plaintiff") filed the instant action on July 17, 2015, against Equifax and Bank of America, N.A. ("BOA"), seeking damages for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). ECF No. [1] (the "Complaint"). BOA was terminated from this action on February 17, 2016, upon the Court's grant of summary judgment in its favor. *See* ECF No. [29]. Equifax now requests summary judgment in its favor on these FCRA claims.

---

[1] Plaintiff originally filed this action against both Equifax Information Services, LLC, and Bank of America, N.A.

Equifax is a consumer reporting agency ("CRA") as defined by the FCRA. As a CRA, Equifax maintains credit files for millions of consumers, including Plaintiff. *See* ECF No. [39-2] (Declaration of Pamela Smith ("Smith Aff.")) ¶ 7. Upon receipt of a dispute from a consumer regarding the accuracy of information in the consumer's credit file, Equifax represents that its policy is to review and consider information provided by the consumer regarding the nature of the dispute, as well as the contents of the consumer's credit file. *See* ECF No. [39] (Defendant's Statement of Facts ("D SOF")) ¶ 33.[2] If, upon review of the dispute and the file, Equifax is able to make updates, it will undertake those updates. *Id.* ¶ 34. If further investigation of the consumer's dispute is required, Equifax notifies the source of the information and advises it of the consumer's dispute, describes all relevant information, and provides the consumer's account information as it then appears in the consumer's credit file. *Id.* ¶ 35; *see also* ECF No. [41] (Plaintiff's Responsive Statement of Facts ("P SOF")) ¶ 35 ("35. Undisputed."). In conjunction with this notification, Equifax asks the data furnisher to investigate the consumer's dispute and to advise as to the accuracy of the underlying account information. *Id.* ¶ 21.

Communications between Equifax and the data furnisher are generally made through a process wherein Equifax electronically transmits a form called an Automated Consumer Dispute Verification ("ACDV") to the data furnisher. D SOF ¶ 37. Equifax represents that the ACDV process is an industry standard used by all three of the nationwide consumer reporting agencies (Equifax, Experian, and Trans Union). *Id.* According to the Motion, it allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases. *Id.* ¶ 38. When a data furnisher receives an ACDV from Equifax, it is required, both by its contract with Equifax and by the FCRA, to conduct its own investigation

---

[2] The Court cites frequently to Defendant's Statement of Facts, because it is largely undisputed by Plaintiff, with some exceptions.

Case 0:15-cv-61467-BB   Document 47   Entered on FLSD Docket 05/25/2016   Page 3 of 13

Case No. 15-cv-61467-BLOOM/Valle

and to report the results to Equifax in a timely manner.  *Id.* ¶ 40.  If the data furnisher advises Equifax to delete or otherwise update the account information, then Equifax, per its internal procedures, takes the necessary action and notifies the consumer of the results.  *Id.* ¶ 41.  If the data furnisher states that it has investigated the item but has no changes, Equifax will generally, but not always, make no changes to the credit file.  *Id.* ¶ 42.[3]  Following the completion of its reinvestigation, Equifax's procedure involves sending the consumer a letter (or an e-mail, if requested by the consumer) containing the reinvestigation results, along with a summary of the consumer's rights under the FCRA, including the right to add a consumer statement to the credit file if the consumer disagrees with the results.  *Id.* ¶ 44.

Equifax submits that it followed these reasonable reinvestigation procedures with respect to Plaintiff's disputes.  *See id.* ¶¶ 24-35.  As a result, the Motion contends, it is not liable in this action as a matter of law.  Plaintiff does not disagree – instead, he argues that conformance with reasonable reinvestigation procedures is besides the point.  Pagazani avers that, whether or not Equifax properly followed its own procedures, it produced a consumer report that, although technically accurate, is materially misleading as to render it inaccurate.  He submits that this amounts to a willful violation of the FCRA.

**II. Material Facts**

Relevant to the instant controversy, Yoryeris Pagazani, Plaintiff's spouse, opened a BOA MasterCard, account number 9990[4] (the "Account"), on January 11, 2008, and listed Plaintiff as an authorized signer on the account.  *See* ECF No. [22-1] (Declaration of Kevin Williams ("William Aff.")) ¶ 4; *see* ECF No. [41-1] (Affidavit of Eduardo Pagazani ("Pagazani Aff.")) ¶

---

[3] According to its Statement of Facts, Equifax maintains policies and procedures that allow its dispute handlers, under some circumstances, to make changes to the credit file not recommended by the data furnisher. *Id.* ¶ 43.
[4] Plaintiff's full account numbers have been redacted for security purposes.

2).  The Account was charged off as a loss to BOA on January 31, 2012, in the amount of $8,211.72, following Yoryeris Pagazani's failure to make minimum monthly payments, as required under the Agreement.  William Aff. ¶ 7; *see* D SOF ¶ 13.  On March 25, 2013, the Account was sold to a company called Portfolio Recovery Associates.  *Id.* ¶ 8.  Eventually, Yoryeris Pagazani filed for bankruptcy, and the debt on the BOA Account was discharged.  *See* ECF No. [31-3] (bankruptcy court order discharging debt).  Nevertheless, the bankruptcy matter has no bearing on the relief sought here.

On August 11, 2014, Plaintiff disputed in writing, the information that BOA reported to Equifax regarding the Account.  *See* ECF No. [23] at 10 (March 31, 2014 merged consumer report), and 12 (August 11, 2014 letter); Compl. ¶ 15.  Plaintiff's letter read as follows: "Said listing falsely represents that the amount set forth above was charged off as a bad debt and placed for collection and skip.  Eduardo Pagazani is merely an 'Authorized Signer' for the above-mentioned account.  The account is not his and should not be reflected on his credit report."  *Id.* at 12.  Equifax responded to Plaintiff's correspondence on August 21, 2014, requesting personal identification documents from Pagazani.  *Id.* at 21.

Plaintiff did not respond until March 30, 2015 with the requested information.  In this second letter, he again disputed the Account as improperly reflected on his credit report.  *Id.* at 24 (reading almost verbatim to the August 21, 2014 letter).  In response to this letter, on April 8, 2015, Equifax sent BOA an ACDV requesting that it "[p]rovide or confirm complete ID and account information."  Williams Aff. ¶ 9.  This correspondence indicated that Pagazani believed that the subject Account, as reflected on his credit report, "states inaccurate information."  *Id.*  The ACDV further indicated that Plaintiff "[d]isputes present/previous Account status/Payment

4

History Profile/Payment Rating." *Id.* The March 30, 2015, letter was attached to the ACDV.[5] *See id.*; Pagazani Aff. ¶ 7. The ACDV indicated that BOA was reporting the BOA Account with an Equal Credit Opportunity Act ("ECOA") code of 3 as to Plaintiff. Williams Decl. ¶ 12. It is undisputed that ECOA code of 3 equates to authorized user, not obligor, with respect to an account record. *Id.*

On April 27, 2015, BOA responded to Equifax. It first requested a modification to the Account, to include the narrative "credit card," along with the other narratives "account transferred or sold" and "charged off account." D SOF ¶ 54. BOA also updated the "date closed" to January 2012 and the "actual payment" to $60. *Id.* However, it did not seek to change the ECOA code of 3 on the Account. *Id.* ¶ 55. As a result, per BOA's advisement, the Account continued to appear on Plaintiff's Equifax file with this code equating to authorized user. *Id.* On April 28, 2015, Equifax provided Plaintiff the results of its reinvestigation. *Id.* ¶ 56. Equifax received no additional correspondence from Plaintiff regarding the BOA Account or otherwise. *Id.* ¶ 57.

As a result of Equifax's failure to remove the BOA Account from his credit report, Pagazani alleges that he was denied credit on January 1, 2008, for a SunTrust business credit card. ECF No. [39-1] (excerpts of Pagazani deposition transcript ("Pagazani Depo.")) at 27:5-19, 40:13-18; D SOF ¶¶ 16-17. He also claims that he was provided with less favorable terms in his lease of a Mercedes-Benz vehicle. Pagazani Depo. at 46:25-47:8 ("I didn't get premier, I guess, rate, so I got a higher interest."). The instant suit seeks compensation for these alleged damages.

---

[5] Neither the April 8 ACDV, nor the March 30, 2015, letter attached thereto, made any mention of Yoryeris Pagazani's bankruptcy, and Plaintiff did not dispute the reporting of the Account on the basis of his wife's obligation having been discharged. Williams Decl. ¶ 11; Pagazani Aff. ¶ 7.

### III. Legal Standard

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But, even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n. 6 (11th Cir. 2004).

## IV. Discussion

Defendant maintains that the accuracy of its reporting of the BOA Account precludes a finding of liability under the FCRA as a matter of law.[6] Pagazani does not dispute the accuracy of the reporting. Instead, his argument boils down to an assertion that, regardless of any results deriving from reasonable reinvestigation procedures, Equifax should have removed the BOA Account from Pagazani's credit report per his written requests.

This controversy involves two interwoven sections of the FCRA, §§ 1681e(b) and i(a).[7] Section 1681e(b) provides as follows: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of

---

[6] Equifax further argues that Plaintiff has failed to establish that any damages suffered were proximately caused by the CRA. Moreover, the Motion highlights the lack of evidence in this case supporting alleged damages. *See generally* Pagazani Depo. Although these arguments have merit, they are not reached until or unless Plaintiff establishes a statutory violation.

[7] Pagazani also claims that Equifax's violations of the FCRA were willful, as governed by section 1681n(a)(2) of the FCRA. That provision permits an award of statutory and punitive damages if a CRA "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA encompasses both intentional and reckless violations of the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). The Court need not address this argument further as it concludes that Equifax did not violate the FCRA under these facts.

the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 827 (11th Cir. 2009) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1161 (11th Cir. 1991)) (stating that a *prima facie* case for violation of section 1681e(b) requires a plaintiff to plausibly allege that "(1) a credit reporting agency's report was inaccurate; and (2) that the inaccurate report was a causal factor in the denial of his credit application"). The FCRA further requires that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . .

15 U.S.C. § 1681i(a)(1)(A); *see Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1375 (S.D. Fla. 2015). "[T]he duty to report 'inaccuracies' under § 1681s-2(b) of the FCRA includes a duty to report information that may be 'technically accurate' but is 'presented in such a way that it creates a misleading impression' in a material sense." *Bauer v. Target Corp.*, -- F. Supp. 2d --, 2012 WL 4054296, at *3 (M.D. Fla. Sept. 14, 2012) (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)).

Plaintiff does not dispute that Equifax's reporting was accurate; nor does he dispute that Equifax conducted a reasonable reinvestigation, as required by section 1681i(a). Rather, he makes a general argument that Equifax's reporting "[wa]s insufficient and misleading to convey Plaintiff's obligation on the related debt" – so as to render it inaccurate – and, as such, has "caused actual harm to his ability to obtain credit and to his reputation." Resp. at 1-2. "To determine whether a consumer has identified a factual inaccuracy on his or her credit report that would activate § 1681i's reinvestigation requirement, the decisive inquiry is whether the defendant could have uncovered the inaccuracy if it had reasonably reinvestigated the matter."

*DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding that CRA was not required to resolve dispute where plaintiff admitted obtaining loan, but challenged loan's validity) (quoting *Cushman v. Trans Union Corp.*, 920 F. Supp. 80, 83 (E.D. Pa. 1996)) (alterations adopted).

To understand that test, the Court finds *Cahlin*, 936 F.2d at 1160, instructive. In that case, the plaintiff claimed that a CRA erroneously mischaracterized the charge off and later settlement of the subject debt as a negative credit event. *Id.* ("That is, he argues that he should have been given a clean slate on his credit report after he settled the debt with GMAC's [the defendant bank's] collection attorney."). Ultimately, the Eleventh Circuit affirmed the district court's granting of summary judgment to the CRA, reasoning as follows:

> A consumer, however, cannot bring a [FCRA] claim against a credit reporting agency when it exercises its independent professional judgment, based on full information, as to how a particular account should be reported on a credit report. In this case, CBI initially reported that the GMAC account was a charged off account with an outstanding balance and eventually acceded to GMAC's directives that Cahlin's account be rehabilitated to avoid litigation. No reasonable investigation on the part of CBI could have uncovered any inaccuracy in Cahlin's report because there was never any factual deficiency in the report.

*Id.* In other words, a CRA is not obligated to report information about a disputed item simply because the consumer asserts a legal defense. Indeed, "the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Id.* at 1158.

Here, as in *Cahlin*, there is no dispute that the Account was accurately reflected on Pagazani's credit report. Instead, Pagazani attacks the underlying legal issue of whether an account for which an individual is only an authorized user is properly associated with that individual's credit history – or, conversely, whether including that information "creates a misleading impression in a material sense." *Bauer*, 2012 WL 4054296, at *3. "This is not a

9

factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue [implicating applicable banking and commerce laws] that a credit agency such as [Equifax] is neither qualified nor obligated to resolve under the FCRA." *DeAndrade*, 523 F.3d at 68. "Because CRAs are ill equipped to adjudicate contract [or other legal] disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).

The Court is, of course, mindful of "the legislative purpose of the FCRA to serve, in significant part, as a consumer-protection tool." *Rapapport v. Green Tree Servicing, LLC*, No. 13-61624-CV, 2013 WL 5728731, at *5 (S.D. Fla. Oct. 22, 2013) (citing *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information.")). The instant dispute as presented, nevertheless, does not implicate the "improvement of the accuracy of consumer records and the efficient resolution of consumer disputes." *Id.* Furthermore, alternative remedies were available to Plaintiff. First, the FCRA allows consumers who are dissatisfied by a reinvestigation to file a brief explanatory statement to be reported along with the disputed item. *See Mangio v. Equifax, Inc.*, 887 F. Supp. 283, 284 (S.D. Fla. 1995) (quoting 15 U.S.C. § 1681i(b)-(c)). "In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *Cahlin*, 936 F.2d at 1160 n. 23. Second, Pagazani could have gone to the source of the credit information, BOA, to attempt to resolve the dispute. The parties have even stipulated on the record that "the data furnisher is typically in the best position to investigate a dispute, as it has the records and direct relationship with the consumer." D SOF ¶ 36; P SOF ¶ 36; *Paul v.*

*Experian Info. Solutions*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011) ("With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer.") (quotations omitted); *Carvalho*, 629 F.3d at 892 ("Carvalho complains that such an explanatory statement cannot obliterate the stain of a derogatory item on her credit report. While this may be true, it merely reinforces our view that a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level. If successful, the consumer can clear her credit report without the need for any explanatory statements. That Carvalho failed to do so is no fault of the CRAs."). Certainly, the Account that Pagazani disputes is with BOA – not Equifax.

The evidence demonstrates that Pagazani sought no further relief beyond the two letters he sent to Defendant, on August 11, 2014, and March 30, 2015 – from Equifax or otherwise. Moreover, the significant length of time between these two letters was the result of his own lack of diligence in failing to respond to Equifax's request for personal identification documents for more than seven months. Because of Plaintiff's delay, Equifax was unable to send an ACDV to BOA until April 8, 2015, shortly after Pagazani's second letter. Once BOA responded to Equifax on April 27, 2015, Defendant made the requested changes, as detailed above, and sent Plaintiff the results of its reinvestigation on the very next day. Pursuant to the information provided by BOA, the reinvestigation did not counsel Defendant to remove the Account record from Pagazani's credit report.

The parties agree as to this series of events – they only disagree as to their meaning under the law. To the extent that Plaintiff mounts an attack against the standard industry process and procedures used by consumer reporting agencies nationwide – which allow CRAs to communicate with data furnishers through use of pre-defined codes and narrative phrases, *id.* ¶

38 – that argument must fail.  Plaintiff  seeks to hold Equifax liable in this instance, not for failing to comply with reasonable standards, but, for expressly following them.  This notion conflicts with the plain language of the FCRA, which instructs a CRA to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  Likewise, the Court declines to conclude that conformance with the FCRA in this case created a materially misleading impression of the Account debt.  *See* Resp. at 1-2.  To hold otherwise would allow claims that wrongly confuse consumer dissatisfaction with unfair reporting.

Ultimately, Equifax could not have resolved Pagazani's legal dispute with BOA through a reasonable reinvestigation, pursuant to sections 1681e(b) and i(a).  *See, e.g.*, *Carvalho*, 629 F.3d at 892 (finding that district court properly granted summary judgment to CRAs because plaintiff failed to demonstrate that reporting was incorrect or materially misleading).  This is the only pertinent inquiry at this stage.  Accordingly, Plaintiff's FCRA claims cannot survive Defendant's Motion.

**IV. Conclusion**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [38]**, is **GRANTED** as follows:

1. Summary judgment is entered **in favor of Defendant Equifax Information Services, LLC.**
2. The Clerk is **DIRECTED TO CLOSE** this case.
3. Any pending motions are **DENIED AS MOOT**.
4. All pending deadlines are **TERMINATED**.

Case No. 15-cv-61467-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 24th day of May, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copied to: Counsel of record

13